USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/01/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NAJJAR GROUP, LLC,

                Plaintiff,

        v.

WEST 56TH HOTEL LLC d/b/a
CHAMBERS HOTEL,

                Defendant.

No. 14-CV-7120 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Najjar Group, LLC brings this diversity action against Defendant West 56th Street

Hotel, LLC ("West 56th") for breaching the terms of an agreement to operate a New York hotel.

Plaintiff moves for leave to file a third amended complaint. For the reasons set forth below,

Plaintiff's motion is denied.

## BACKGROUND[1]

### A. Factual Background

On December 15, 1997, Plaintiff's predecessor-in-interest, the Najjar Group, Ltd., sold and

conveyed to Defendant its right to purchase a parcel of property located at 15 West 56th Street in

---

[1] These facts are drawn from Plaintiffs' proposed Third Amended Complaint ("TAC") (ECF No. 60-1) and are assumed to be true for purposes of this motion. *See Thea v. Kleinhandler*, 807 F.3d 492, 494 (2d Cir. 2015). The Court may also consider the operating agreement between West 56th Street Hotel LLC and the Najjar Group Ltd., which Plaintiff appended to the Second Amended Complaint, *see* SAC Ex. A (ECF No. 22-1), and incorporated by reference into the proposed Third Amended Complaint, *see, e.g.*, TAC ¶¶ 13–49. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Finally, the Court may consider court documents in the parties' state-court actions, as these documents are proper subjects of judicial notice. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 509 n.1 (S.D.N.Y. 2016).

New York, New York. TAC ¶ 14. In exchange, Defendant granted the Najjar Group, Ltd. a twenty

percent membership interest in BDC 56 LLC ("BDC"), the remaining eighty percent of which was

owned by Defendant. TAC ¶ 14. Najjar Group, Ltd. and Defendant also entered into an operating

agreement (the "Operating Agreement") to own and operate a hotel on the property. TAC ¶ 14;

*see* SAC Ex. A § 2.6. Defendant thereafter constructed and opened the Chambers Hotel, which

has been operating and open to the public since 2002. TAC ¶ 15. In or around April 2005,

Defendant amended and restated the Operating Agreement. TAC ¶ 21.[2]

The Operating Agreement contains several terms relevant to this dispute. First, additional

members may not be added to BDC without the prior written consent of Najjar Group, Ltd., if their

admission would dilute Najjar Group Ltd.'s interest in BDC or adversely affect its distributions

from BDC. TAC ¶ 19. Second, BDC must deliver financial statements to each of its members as

soon as practicable after the close of each fiscal year. TAC ¶ 23; Operating Agreement § 4.1.1.

Third, Defendant, as manager of BDC, is responsible for securing funds necessary to pay for start-

up expenses, estimated to be four million dollars. TAC ¶ 29; Operating Agreement §§ 6.1–6.2.

Defendant must arrange third-party financing to cover these expenses to the extent that it is able

to do so, but it may not dilute Najjar's interest in BDC through either third-party financing or any

of its own capital contributions to cover start-up expenses. TAC ¶ 29; Operating Agreement

§§ 6.1–6.2. Fourth, net cash flow from operations is to be distributed on a monthly basis in the

following order of priority: (1) to each member of BDC in an amount that provides the member a

ten percent rate of return, compounded annually, on its outstanding capital contributions, and (2)

---

[2] The Third Amended Complaint indicates that the April 14, 2005 "First Amended and
Restated Operating Agreement of BDC 56 LLC" is attached as Exhibit C, *see* TAC ¶ 21, but it
does not attach any such exhibit. The agreement was, however, submitted as an exhibit to the
Declaration of Steven G. Sonet (ECF No. 76).

to the members in accordance with their equity interests. *See* TAC ¶¶ 27, 31–32; Operating Agreement § 7.1.1.

Plaintiff raises several objections to Defendant's management of BDC. Plaintiff primarily challenges Defendant's decision to contribute fifteen million dollars—far greater than the four million dollars estimated in the Operating Agreement—as additional capital contributions for start-up expenses, rather than borrowing these funds from banks or other lenders at a lower rate of interest. *See* TAC ¶¶ 38–39. Plaintiff also alleges that Defendant misclassified funds as its own capital contributions or additional capital contributions, when in fact those funds were provided by non-members. *See* TAC ¶ 45. In effect, Plaintiff claims that Defendant has admitted additional members to BDC—thus diluting Plaintiff's interest—without Plaintiff's consent. *See* TAC ¶ 46. In addition, Plaintiff claims that Defendant violated "the explicit terms" of the Operating Agreement by misclassifying repayments of capital as returns on capital, failing to deduct repayments of capital from the applicable capital accounts, and improperly accruing interest on capital contributions and additional capital contributions. *See* TAC ¶ 48.

## B. Procedural Background

This action follows Plaintiff's pursuit of two similar actions against Defendant in New York state court. In 2007, Plaintiff brought an action against Defendant and three of its members in the Supreme Court of New York. *See* Aff. of Steven G. Sonet in Opp'n to Pl.'s Mot. ("Sonet Aff.") ¶ 4, Ex. B (ECF No. 64). In 2012, the Supreme Court granted summary judgment in favor of the defendants and dismissed Plaintiff's amended complaint. *See* Sonet Aff. ¶ 6, Ex. D. In 2013, the Appellate Division of the Supreme Court, First Judicial Department, affirmed. *See* Sonet Aff. ¶ 7, Ex. E. In 2011, Plaintiff brought a derivative action against Defendant, its individual members, and other entities in the Supreme Court of New York. *See* Sonet Aff. ¶ 8, Ex. F. The

Supreme Court dismissed Plaintiff's complaint in 2012, *see* Sonet Aff. ¶ 9, Ex. G, and the First Department affirmed the following year, *see* Sonet Aff. ¶ 10, Ex. H.

On September 4, 2014, Plaintiff filed a complaint in this action against Defendant and three of its individual members. *See* Compl. (ECF No. 1). On September 15, 2014, the Court ordered Plaintiff to amend the complaint to allege the citizenship of each party and to specify whether Defendant had any members other than the individual defendants. *See* Order (Sept. 15, 2014) (ECF No. 3).

On September 29, 2014, Plaintiff filed its First Amended Complaint. *See* First Am. Compl. ("FAC") (ECF No. 5). The First Amended Complaint added the jurisdictional allegations the Court requested and asserted eight causes of action: (1) breach of contract, (2) breach of fiduciary duty, (3) breach of the implied covenant of good faith and fair dealing, (4) common law fraud, (5) deceptive acts or practices, (6) tortious interference, (7) accounting, and (8) involuntary judicial dissolution. *See* FAC ¶¶ 83–156. Plaintiff requested damages and equitable relief. *See* FAC ¶¶ (a)–(g).

On October 21, 2014, West 56th and the individual defendants moved to dismiss all claims except Plaintiff's claim for breach of contract. *See* Mot. to Dismiss (ECF No. 10). On November 5, 2014, Plaintiff voluntarily dismissed, without prejudice, all its claims against the individual defendants and all but its breach of contract claim against West 56th under Federal Rule of Civil Procedure 41(a)(1). *See* ECF No. 16.

On November 9, 2014, Plaintiff filed a Second Amended Complaint ("SAC") against West 56th. *See* SAC (ECF No. 22). The Second Amended Complaint asserted only a breach of contract claim. *See* SAC ¶¶ 79–115. West 56th filed an answer on December 1, 2014. *See* Answer (ECF

No. 23).  Over the course of the next year, the parties engaged in fact and expert discovery.  *See generally* Joint Letter of Jan. 22, 2016 (ECF No. 39); Tr. of May 13, 2016 Conf. (ECF No. 62).

On June 21, 2016, Plaintiff moved for leave to file a Third Amended Complaint ("TAC"). ECF No. 51.  Plaintiff's proposed Third Amended Complaint adds three claims to the breach of contact claim asserted in the Second Amended Complaint: (1) accounting, (2) breach of fiduciary duty, and (3) breach of the implied covenant of good faith and fair dealing.  *See* TAC ¶¶ 50–67, 73–76.[3]  The proposed Third Amended Complaint also adds two new factual allegations: (1) an accounting discrepancy, alleged in support of Plaintiff's claim for accounting, *see* TAC ¶ 55, and (2) the assignment to Plaintiff of all causes of action, claims, or other rights arising from its membership in BDC from Plaintiff's predecessor, Najjar Group Ltd., *see* TAC ¶ 11.  On June 27, 2016, the Court issued an order stating that Plaintiff's motion would be deemed timely.  *See* Order (June 27, 2016) (ECF No. 61).  Defendant opposes Plaintiff's motion.  *See* Def.'s Opp'n Mem. (ECF No. 65).

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").  However, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Assuming the original complaint was filed within the statute of limitations, a court must deny as futile any claims

---

[3] The proposed Third Amended Complaint also asserts a claim for minority oppression, *see* TAC ¶¶ 68–72, which Plaintiff withdrew in its reply brief, *see* Pl.'s Reply Mem. at 1 n.1 (ECF No. 75).

that would be otherwise barred by the statute of limitations, unless the claims 'relate back' to the date on which the original complaint was filed." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citing *Slayton v. Am. Express Co.*, 460 F.3d 215, 227–28 (2d Cir. 2006)). "A proposed amendment is also deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* (citing *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

## DISCUSSION

Defendant argues that Plaintiff's motion should be denied because its proposed amendments are futile. Specifically, Defendant argues that Plaintiff's proposed claims for accounting, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing fail as a matter of law because they are duplicative of Plaintiff's claim for breach of contract. The Court agrees.[4]

### A. Accounting

Plaintiff's first proposed amendment to its complaint is the addition of a claim for accounting. *See* TAC ¶¶ 50–59. "To obtain an accounting under New York law, a plaintiff must show: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (internal quotation marks omitted).[5] "An equitable accounting claim cannot coexist with a breach of contract claim

_____

[4] Consistent with the Court's order dated June 27, 2016, the Court assumes that Plaintiff's motion is timely. *See* Order (June 27, 2016) (ECF No. 61). Accordingly, the Court need not address Defendant's argument that Plaintiff's motion should be denied on the ground that it is untimely. *See* Def.'s Opp'n Mem. at 17–18.

[5] The parties do not dispute that New York law applies to Plaintiff's claims.

covering the same subject matter." *Id.*; *see also, e.g., Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co.*, No. 14-CV-6298 (LGS), 2015 WL 170460, at \*2 (S.D.N.Y. Jan. 13, 2015); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, No. 07-CV-10490 (NRB), 2009 WL 855648, at \*11 (S.D.N.Y. Mar. 25, 2009). "That is because a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 340 (E.D.N.Y. 2016); *see also CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425–26 (S.D.N.Y. 2007) (granting summary judgment to defendant on plaintiffs' claim for accounting "[b]ecause [the plaintiffs] have sought money damages under their breach of contract claims, and because discovery has already proceeded as to the measure of damages available to them should they prevail on those claims"), *aff'd*, 328 F. App'x 56 (2d Cir. 2009); *see generally Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (holding that "[b]ecause the plaintiffs have sought money damages in both their breach of contract and conversion claims, and because discovery as to the measure of damages would be available to them if they were to prevail on those claims, they can obtain all the information they seek in their existing claims at law," and "no useful purpose would be served by treating the plaintiffs' equitable accounting claim as an additional, and duplicative, action at law").

Here, Plaintiff's proposed claim for accounting fails because Plaintiff has asserted a breach of contract claim covering the same subject matter. *See* TAC ¶¶ 77–82. Specifically, both Plaintiff's claims for accounting and for breach of contract stem from Defendant's alleged breach of the Operating Agreement and restated operating agreement. Indeed, Plaintiff supports its proposed claim for accounting by alleging specific breaches of these agreements—including, for example, that "Defendant has been accruing and causing BDC to pay interest" on certain amounts

"notwithstanding BDC's restated operating agreement." TAC ¶ 56; *see also* TAC ¶¶ 48 (alleging that Defendant "misclassif[ied] repayments of capital as returns on capital under section 7.1.1" of the Operating Agreement). Moreover, because discovery has already proceeded on the measure of damages available to Plaintiff should it prevail on its breach of contract claim, Plaintiff can obtain all the information it seeks through its existing claim at law.[6] *See Leveraged Leasing Admin. Corp*, 87 F.3d at 49; *CSI Inv. Partners II*, 507 F. Supp. 2d at 425–26. Plaintiff's claim for accounting is thus duplicative of its breach of contract claim and subject to dismissal.[7]

The Second Circuit's decision in *Scholastic, Inc. v. Harris*, 259 F.3d 73 (2d Cir. 2001) is not to the contrary. In *Scholastic*, a former partner of a joint venture sought an accounting even though it had "been given financial reports regarding the condition of the venture since the collaboration's inception." 259 F.3d at 90. The Second Circuit held that the partner was entitled to an accounting under New York law, reasoning that "[e]ven if [it] already possesses detailed financial information regarding the joint venture, there is nevertheless still 'an absolute right to an accounting.'" *Id.* (quoting *Koppel v. Wien, Lane & Malkin*, 509 N.Y.S.2d 327 (1st Dep't 1986)). However, as the Second Circuit recently explained in an unpublished summary order, *Scholastic*'s interpretation of *Koppel* merely stands for the proposition "that the *voluntary* transfer of financial documents or willingness to provide for an inspection or audit are no substitute for a judicially supervised accounting." *Soley v. Wasserman*, 639 F. App'x 670, 674 n.5 (2d Cir. 2016) (summary order) (emphasis in original). Here, by contrast, Plaintiff did receive the information it sought through "judicially supervised" discovery in connection with its breach of contract claim, rather

---

[6] Indeed, Plaintiff's opening brief states that "Plaintiff effectively obtained an accounting from Defendant through the discovery process in this case." Pl.'s Mem. at 3 n.4.

[7] Because Plaintiff cannot state a claim for accounting, Plaintiff's new factual allegation regarding an accounting discrepancy is inconsequential and provides no basis for granting Plaintiff's motion. *See* TAC ¶ 55.

than through a voluntary transfer of records from Defendant. *Id.* Moreover, *Soley* noted that the language in *Koppel*, including that upon which *Scholastic* relied, is "admittedly contradictory" to that of several other New York decisions. *Id.* And while *Soley* ultimately declined to "address the precise contours of *Koppel*," it nonetheless concluded that *Koppel* did not disturb the general rule that a plaintiff must "demonstrate that she has no adequate remedy at law before a court may award an equitable accounting." *Id.* Accordingly, under the circumstances of this case, *Scholastic* does not warrant a finding that Plaintiff has stated a claim for accounting independent of its claim for breach of contract.

## B. Breach of Fiduciary Duty

Plaintiff next proposes amending its complaint to add a claim for breach of fiduciary duty. *See* TAC ¶¶ 60–67. This claim would also fail to survive a motion to dismiss, and any amendment to add it would be futile.

Under New York law, "[t]he elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)). "Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract." *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008). "[A] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Ellington*, 837 F. Supp. 2d at 196 (alteration omitted) (internal quotation marks omitted).

Here, Plaintiff's claim for breach of fiduciary duty duplicates its breach of contract claim. To be sure, Plaintiff has adequately alleged that Defendant, as majority owner and manager of BDC, owed Plaintiff a fiduciary duty. *See, e.g.*, *Pokoik v. Pokoik*, 982 N.Y.S.2d 67, 70 (1st Dep't 2014). However, Plaintiff's claim for breach of that duty is "based upon the same facts and

theories as [its] breach of contract claim." *Brooks v. Key Trust Co. Nat. Ass'n*, 809 N.Y.S.2d 270, 272 (3d Dep't 2006). Indeed, the allegations supporting Plaintiff's fiduciary duty claim— including Defendant's conflict of interest, concealment of material information, and failure to act openly, honestly, and fairly—are "either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith." *Id.*; *see* TAC ¶¶ 60–67. For example, Plaintiff alleges that Defendant's decision to contribute fifteen million dollars to cover start-up expenses—rather than the four million dollars provided in the Operating Agreement—was "an act of self-dealing in violation of its fiduciary duties . . . as well as a breach of the 1997 OPERATING AGREEMENT and the 2005 OPERATING AGREEMENT." TAC ¶ 43. In addition, Plaintiff supports both its breach of fiduciary duty and breach of contract claims by alleging that Defendant opportunistically pursued its interests as a holder of preferred cash flow rights at the expense of common equity members of BDC. *Compare* TAC ¶ 65 (breach of fiduciary duty), *with* TAC ¶¶ 79–80 (breach of contract).[8] Thus, because Plaintiff's claim for breach of fiduciary duty is "entirely duplicative of [its] pending breach of contract claim and subject to dismissal," it does not provide an adequate basis for granting Plaintiff leave to amend its complaint. *Ellington*, 837 F. Supp. 2d at 196.[9]

## C. Implied Covenant of Good Faith and Fair Dealing

Finally, Plaintiffs seek to add a claim for breach of the implied covenant of good faith and fair dealing to their complaint. *See* TAC ¶¶ 73–76. This claim, like Plaintiff's proposed claims

---

[8] *See also, e.g.*, TAC ¶ 47 (characterizing Defendant's "bad faith transactions and accounting schemes to structure BDC's Capital and financing to benefit the interests of Defendant to the detriment of Plaintiff" as a "deliberate violation of Defendant's *contractual and fiduciary* obligations") (emphasis added).

[9] Because the Court concludes that Plaintiff's proposed claim for breach of fiduciary duty would be dismissed as duplicative of its breach of contract claim, it need not address Defendant's alternative argument that this claim is untimely.

10

for accounting and for breach of fiduciary duty, fails because it is duplicative of Plaintiff's claim for breach of contract.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)). "New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* (alteration omitted) (quoting *Harris*, 310 F.3d at 81). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*; *see also, e.g., Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 63 (S.D.N.Y. 2016) ("An implied-covenant claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract."); *Marcus v. W2007 Grace Acquisition I, Inc.*, No. 15-CV-6242 (GBD), 2016 WL 4705154, at *5 (S.D.N.Y. Aug. 24, 2016) ("Typically, raising both claims in a single complaint is redundant, and courts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair dealing where the claims derive from the same set of facts." (internal quotation marks omitted)).

Here, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing relies on the same facts as its claim for breach of contract. Plaintiff supports this claim primarily by cross-referencing the allegations made in support of its claim for breach of fiduciary duty,

which, as discussed above, is duplicative of its claim for breach of contract. *See* TAC ¶ 74.[10]

Plaintiff's only substantive allegation in support of its implied-covenant claim is that Defendant

has "frustrated and defeated" Plaintiff's expectation of "some return on its investment and equity"

and "prevent[ed] Plaintiff from receiving any fruits of the parties' agreement and venture." TAC

¶ 75. This allegation merely repeats Plaintiff's claim that Defendant has breached the Operating

Agreement by, for instance, diluting Plaintiff's interest in BDC and failing to provide requisite

distributions from BDC's net operating cash flow. *See* TAC ¶¶ 79–80. In light of Plaintiff's claim

for breach of contract, its duplicative claim for breach of the implied covenant of good faith and

fair dealing would be subject to dismissal. *See Cruz*, 720 F.3d at 125; *Alaska Elec. Pension Fund*,

175 F. Supp. 3d at 63 (dismissing a claim for breach of implied covenant of good faith and fair

dealing under New York law where "Plaintiffs' implied-covenant claim is based on precisely the

same allegations as their breach-of-contract claim"); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d

454, 470 (S.D.N.Y. 2016) (dismissing an implied-covenant claim under New York law, where the

claim "relies on no facts distinct from the breach of contract claims").

In sum, Plaintiff's proposed claims for accounting, breach of fiduciary duty, and breach of

the implied covenant of good faith and fair dealing would not withstand a Rule 12(b)(6) motion to

dismiss. Accordingly, Plaintiff's proposed amendments are futile, and the Court declines to grant

Plaintiff leave to amend its complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file a third amended complaint is

denied. Plaintiff's Second Amended Complaint remains its operative pleading in this action. *See*

---

[10] Plaintiff also cross-references its allegations made in support of its claim for minority oppression, *see* TAC ¶ 74, but Plaintiff has since withdrawn this claim, *see* Pl.'s Reply Mem. at 1 n.1.

SAC (ECF No. 22).  Consistent with the parties' request at the post-discovery conference, *see* ECF No. 62, they are to jointly propose a briefing schedule for motions for summary judgment and indicate whether they may be amenable to a settlement conference no later than March 7, 2017. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry No. 51.

SO ORDERED.

Dated:    March 1, 2017
          New York, New York

Ronnie Abrams
United States District Judge